IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Nina Y. Wang

Civil Action No. 22-cv-01793-NYW-KAS

TIMOTHY HAWLEY,

    Plaintiff,

v.

KH GOVERNMENT SOLUTIONS, LLC, and
AAKASH PATEL,

    Defendants.

## ORDER ON MOTION TO DISMISS

This matter is before the Court on Defendants' Second Renewed Motion to Dismiss Fraud Claim and to Dismiss Mr. Patel (the "Motion" or "Motion to Dismiss"). [Doc. 71]. The Court has reviewed the Motion and the related briefing, the applicable case law, and the entire case file. For the reasons set forth below, the Motion to Dismiss is respectfully **DENIED**.

## BACKGROUND

The Court draws the following facts from the Second Amended Complaint and Jury Demand (the "Second Amended Complaint"), [Doc. 68], and takes them as true for purposes of this Order. This case arises out of "a real estate sale of a condominium" from Defendant KH Government Solutions, LLC ("KH") to Plaintiff Timothy Hawley ("Plaintiff" or "Mr. Hawley"). [*Id.* at ¶¶ 2, 5]. Defendant Aakash Patel ("Mr. Patel," and collectively with KH, "Defendants") is the sole member of KH. [*Id.* at ¶ 2].

KH and Mr. Hawley entered into a contract for the sale of the condominium. [*Id.* at ¶ 5]; *see also* [Doc. 43-2].[1]  The contract contains, among others, the following terms: (1) Plaintiff was to pay a $90,000 down payment and was to pay the remaining balance in monthly $22,667 installments; and (2) in the event of a late payment, Plaintiff would be assessed a 25% late fee, which amounts to a monthly fee of $5,660. [*Id.* at ¶ 6]. Mr. Hawley claims that the contract's late-fee terms "were obviously illegal penalty clauses, and not remotely near reasonable pre-estimates of damages" and that the late fees were "grossly unconscionable, illegal penalties" that were "uncollectable." [*Id.* at ¶¶ 6–7]. According to Plaintiff, "Defendants collected the illegal and unconscionable late charges and regularly harassed and threatened Plaintiff to attempt to collect the illegal funds." [*Id.* at ¶ 8].

After the contract was executed, Plaintiff and Defendants[2] engaged in a number of text message communications. [*Id.* at ¶ 12(c)]. Plaintiff alleges that Defendants "advis[ed] Plaintiff that he owed the illegal late charges, without any actual accounting

---

[1] A court may consider documents attached to or referenced in the operative pleading without converting a motion to dismiss into a motion for summary judgment if the extraneous documents are central to the plaintiff's claims and the parties do not dispute the documents' authenticity. *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 861 F.3d 1081, 1103 (10th Cir. 2017). The Court may properly consider the contract in ruling on the Motion to Dismiss, even though it is not attached to Plaintiff's Second Amended Complaint, because it is referenced in the pleading, *see* [Doc. 68 at ¶ 5], has been filed elsewhere by Plaintiff on the docket, [Doc. 43-2], and no Party disputes its authenticity. *See* [Doc. 51 at 2 n.1 (this Court considering the contract when ruling on the first motion to dismiss in this case)]; *see also Dreyer v. Am. Nat'l Prop. & Cas. Co.*, No. 18-cv-03334-MSK-SKC, 2019 WL 3002927, at *1 n.2 (D. Colo. July 10, 2019) (considering document attached to original pleading, but not amended pleading, because it was "both referenced in . . . the operative [pleading] and [was] central to" the plaintiffs' claims).

[2] The Second Amended Complaint often refers to Defendants collectively, without specifying which actions are allegedly attributable to which Defendant. *See, e.g.*, [Doc. 68 at ¶¶ 5, 8–9, 12(c)]. The Motion to Dismiss does not take issue with these collective allegations and so the Court does not attempt to distinguish between Defendants.

2

from Defendant, and repeatedly threaten[ed] to sell the property to another buyer or lock [Plaintiff] out evict him and wipe out his investment in the contract for deed if the late fees and un-owed additional payments were not paid immediately." [*Id.*].  For example, on October 15, 2020, Defendants texted Plaintiff and told him that if he did not pay them at least $18,000, they "would 'be adding another 25% late fee,'" but that the 25% late fee would be removed if Plaintiff paid by October 22.  [*Id.* at ¶ 12(c)(i), (iii)].  Defendants also told Plaintiff that they would "sell the house out from under [Plaintiff]" if he did not pay more money.  [*Id.* at ¶ 12(c)(ii)].  Defendants sent similar threatening messages about late fees in the following days.  *E.g.*, [*id.* at ¶ 12(c)(iv)–(vii), (ix)–(x)].  On October 22, 2020, Defendants "threatened to add a 'daily [$13,000] late fee'" if Plaintiff did not pay more money.  [*Id.* at ¶ 12(c)(i)(viii)]; *see also generally* [Doc. 43-3 (the text messages)].[3]

Plaintiff alleges that Defendants' representations about payments, late fees, and related consequences were all false because he had already paid the contract in full as of June 10, 2020.  [*Id.* at ¶¶ 12(c)(i), 13].  He also alleges that the statement "about transferring title was false in that Defendants made a promise to transfer title with every intention of inventing an excuse to claim a forfeiture of Plaintiff's interest and reselling the property."  [*Id.* at ¶ 13].  He further alleges that "the statement about adding a 'daily [$13,000] late fee' was also false because, even if legal, it was not in the contract."  [*Id.*]. Mr. Hawley alleges that he was deceived into believing that he owed the late charges and "that he could lose his investment for failing to pay them."  [*Id.* at ¶ 15].  He claims that he has overpaid Defendants approximately $108,772.66 "that he was not obligated to pay at

---

[3] The Court considers the text messages in ruling on the Motion to Dismiss without converting the Motion into one for summary judgment.  *See supra* note 1.

3

times and in ways . . . that were often difficult and inconvenient for him," and that he suffered emotional distress due to Defendants' conduct.  [*Id.* at ¶ 16].

Mr. Hawley initiated this civil action on July 20, 2022, [Doc. 1], and filed a First Amended Complaint on March 7, 2023, [Doc. 45].  In the First Amended Complaint, Plaintiff asserted claims for (1) breach of contract, (2) fraud, and (3) "equitable restitution."  *See* [*id.* at 3–5].  Defendants subsequently sought dismissal of Plaintiff's fraud and equitable restitution claims.  *See generally* [Doc. 47].  On August 1, 2023, this Court granted Defendants' first motion to dismiss,[4] concluding that Plaintiff's allegations as to either claim were insufficient under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  [Doc. 51 at 9–12].  Thereafter, Plaintiff filed an unopposed motion to amend, *see* [Doc. 63; Doc. 66 at ¶ 3], and Plaintiff filed the Second Amended Complaint with the Court's leave, [Doc. 67; Doc. 68].

The Second Amended Complaint asserts four claims for relief:  two counts of breach of contract, [Doc. 68 at ¶¶ 9–11, 17–20]; one count of fraud, [*id.* at ¶¶ 12–16]; and one count of "rescission under C.R.S. § 38-35-126," [*id.* at ¶¶ 21–23].  Defendants now seek dismissal of Plaintiff's fraud claim and seek dismissal of Mr. Patel from this lawsuit.  [Doc. 71 at 1].

---

[4] Defendants reference "two prior motions to dismiss that were granted."  *See* [Doc. 71 at 2].  The Court notes, however, that a motion to dismiss filed on January 5, 2023 was granted because Plaintiff agreed that his fraud allegations were not sufficient and that he "need[ed] to amend" his pleading.  *See* [Doc. 39 at 1; Doc. 40].  Only one motion to dismiss has been granted after substantive consideration.  *See* [Doc. 51].  Accordingly, when the Court refers to the "first motion to dismiss," it refers to the motion filed on March 15, 2023, *see* [Doc. 47], which the Court granted on August 1, 2023, [Doc. 51].

**LEGAL STANDARD**

Under Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a motion under Rule 12(b)(6), the Court must "accept as true all well-pleaded factual allegations . . . and view these allegations in the light most favorable to the plaintiff." *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009). A plaintiff may not rely on mere labels or conclusions, "and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Rather, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation omitted); *see also Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (explaining that plausibility refers "to the scope of the allegations in a complaint," and that the allegations must be sufficient to nudge a plaintiff's claims "across the line from conceivable to plausible"). The Court must ultimately "determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007).

**ANALYSIS**

**I.     The First Motion to Dismiss**

Before turning to the pending Motion to Dismiss, the Court finds it helpful to summarize its ruling on the first motion to dismiss. The allegations in Plaintiff's Second Amended Complaint are fairly similar to the allegations in his First Amended Complaint. *Compare* [Doc. 45], *with* [Doc. 68]. Broadly speaking, Plaintiff alleged in his First Amended Complaint that Defendants had committed fraud because the contract contained "several terms that were obviously illegal penalty clauses" that were

5

"unconscionable and thus unenforceable" and Defendants knew that the terms were illegal and unenforceable. [Doc. 45 at ¶¶ 6, 13–14]. In the Court's order on the first motion to dismiss, the Court found that Plaintiff had "impermissibly conflate[d] two theories:  (1) that Defendants committed fraud by misrepresenting what was in the contract; and (2) that the contract terms were unenforceable due to being illegal and unconscionable." [Doc. 51 at 7]. The Court concluded that to the extent Mr. Hawley alleged that the contractual terms were illegal or unconscionable, and thus unenforceable, "such a cause of action may be viable but is distinct from a cause of action for fraud that necessarily requires the pleading of a material misstatement or omission." [*Id.* at 9]. The Court observed that Plaintiff had not alleged that Defendants made any material misstatement or omission, but had instead simply relied on contractual terms that he found objectionable. [*Id.* at 8]. Because Plaintiff had not alleged any actual misrepresentation by Defendants (i.e., Plaintiff had not alleged that Defendants misrepresented to Plaintiff what was in the contract or that Defendants falsely represented to Plaintiff that the factual terms were legally permissible), the Court concluded that Plaintiff failed to state a plausible fraud claim. [*Id.* at 7–9].

## II.     The Instant Motion to Dismiss

### A.     The Sufficiency of Plaintiff's Allegations

To state a claim for fraud under Colorado law, a plaintiff must allege that:  (1) "the defendant made a false representation of a material fact"; (2) the defendant knew the representation to be false; (3) the defendant made the representation with the intent that it would be acted upon; (4) "the person to whom the representation was made was

6

ignorant of the falsity"; and (5) "the reliance resulted in damage to the plaintiff." *Coors v. Sec. Life of Denver Ins. Co.*, 112 P.3d 59, 66 (Colo. 2005).[5]

In the instant Motion to Dismiss, Defendants contend that Plaintiffs cannot state a fraud claim based on the text messages because "the text messages [we]re all correct, and [we]re all made in accordance with the terms of the Contract for Deed." [Doc. 71 at 5].  Defendants then proceed to discuss each of the alleged text messages and explain why each of the statements therein is true and accurately reflects the terms of the contract.  [*Id.* at 5–8].  Defendants assert that these text messages "are in enforcement of the Contract for Deed, and when compared against specific terms of the Contract, are shown to be correct." [*Id.* at 8].  They contend:  "There is not a single statement anywhere in the text messages that misstate the parties' rights under the Contract for Deed.  Nor does Plaintiff point out any." [*Id.*].

Defendants' argument, however, ignores Plaintiff's new allegation that the text messages about upcoming payments due, the imposition of late charges, and the threats to take back the property were false because by the time that those text messages were sent in October 2020, Plaintiff had already paid the balance of the contract.  *See* [Doc. 68 at ¶ 12(c)(i)].  If true, as the Court must assume at this stage, then Defendants' alleged

---

[5] In diversity cases, state law determines the substantive elements of fraud, but the party asserting fraud must plead those elements with particularity as required by Rule 9(b) of the Federal Rules of Civil Procedure.  *Weatherhead v. Globe Int'l, Inc.*, 832 F.2d 1226, 1228 (10th Cir. 1987).  Under Rule 9, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake," Fed. R. Civ. P. 9(b), which requires the plaintiff to "set forth the time, place and contents of the false representation, the identity of the party making the false statements and the consequences thereof," *George v. Urb. Settlement Servs.*, 833 F.3d 1242, 1254 (10th Cir. 2016) (quotation omitted).  Defendants do not raise a Rule 9(b) argument.  *See generally* [Doc. 71].

7

statements about future payments due, the imposition of late charges, and the threats to take back the property were indeed false. Accordingly, Defendants' argument is respectfully unpersuasive at this juncture.

Defendants also contend that the allegation about a $13,000 daily late fee cannot "be the basis for a fraud claim" because "Plaintiff fails to explain why the statement is false," and "fails to allege that the Defendants knew it was false, that the Defendants made the statement with the intent that it be acted upon, that Plaintiff did anything in response to the statement, or that the Plaintiff was damaged by this specific statement." [Doc. 71 at 8]. But Plaintiff does allege that this statement was false. *See* [Doc. 68 at ¶ 13 ("[T]he statement about adding a 'daily [$13,000] late fee' was also false because, even if legal, it was not in the contract.")]. And Defendants' remaining arguments demonstrate a too-narrow reading of Plaintiff's Second Amended Complaint, which does adequately allege the remaining elements of a fraud claim with respect to all of the text messages, including the text message threatening a new $13,000 daily late fee. *See* [*id.* at ¶ 12(c) (Defendants told Plaintiff he owed late charges "without any actual accounting from Defendant"); *id.* at ¶ 14 ("Defendants . . . knew a daily $13,000.00 late fee was . . . not provided by the contract."); *id.* at ¶ 15 ("Plaintiff paid Defendants' illegal charges as soon as he possibly could, including even taking a flight to Texas to pay with cash in person."); *id.* at ¶ 16 (Plaintiff suffered severe emotional distress)]. Finally, a review of the language, volume, and timing of the text messages sent by Defendant, which the Court may properly consider at this stage, adequately suggests that this representation was made with the intent that Plaintiff would act upon it:

> [Thursday, October 22, 2020] 4:04 PM: Hello? Need to know what's up <u>regarding today's payment</u>.

8

> 4:04 PM:  As I've said if a payment is not made <u>by midnight</u> then we will be adding a 25 percent charge
>
> 4:04 PM:  This will be non refundable [sic]
>
> 4:05 PM:  That is a late fee that will be close to 30k+
>
> 5:37 PM:  <u>Since I have not heard from you</u> and <u>if no payment is made before mid night</u> [sic] I will add the 25 percent late fee, then I'm going to be <u>adding a daily late fee</u> until the end of the month.  Then on nov 1 [sic] I will list home for sale.  <u>From here on I will apply a daily 13k late fee</u>.
>
> 5:38 PM:  You all need to get ahold of me and <u>make arrangements today</u>.

*See* [Doc. 43-3 at 9–10 (emphasis added)]; *see also* [Doc. 68 at ¶ 12(c)(vii)–(viii)].  In sum, Defendant has not demonstrated that Plaintiff's fraud claim is subject to dismissal under Rule 12(b)(6).[6]

### B.   The Economic Loss Rule

In the alternative, Defendants contend that Plaintiff's fraud claim is barred by the economic loss rule.  [Doc. 71 at 10–11].  This rule provides that "a party suffering only economic loss from the breach of an express or implied contractual duty may not assert a tort claim for such a breach absent an independent duty of care under tort law."  *Town*

---

[6] The Second Amended Complaint also alleges that the attorney who drafted the contract was Mr. Patel's brother.  *See* [Doc. 68 at ¶¶ 12, 14].  Defendants raise arguments in their Motion to Dismiss that these allegations are "utterly frivolous" and cannot support Plaintiff's fraud claim.  [Doc. 71 at 9–10].  Plaintiff responds that

> Plaintiff had heard the lawyer was a brother; he must have been mistaken. But it makes no difference; there is a reasonable inference that ***any*** attorney, related or not, that drafted this contract for deed with its truly enormous "late charge" had to be either close to Patel and helping him commit fraud or was duty bound to tell Patel this term was illegal.  If Defendant says its [sic] false, the Court may disregard the allegation.  But Patel obviously told his lawyer to draft it anyway and pushed it as binding on Plaintiff.  Each way condemns Patel and his scam.

[Doc. 80 at 6].  The Court construes Plaintiff's response as a withdrawal of this allegation and accordingly does not consider the allegation that the contract was drafted by Mr. Patel's brother.

9

*of Alma v. AZCO Constr., Inc.*, 10 P.3d 1256, 1264 (Colo. 2000).  The rule "serves to maintain a distinction between contract and tort law." *Id.* at 1262.  To determine whether the economic loss rule applies, courts "focus on the source of the duty alleged to have been violated." *Id.* at 1263.  If the claim is based on "the existence of a duty *independent* of any contractual obligations, the economic loss rule has no application and does not bar a plaintiff's tort claim because the claim is based on a recognized independent duty of care and thus does not fall within the scope of the rule." *Id.*  But if there is no independent tort duty separate from those duties imposed by the contract, the economic loss rule bars the claim.  *Id.* at 1264–65.

Both Parties raise abbreviated arguments with respect to application of the economic loss rule.  Defendants argue that the rule bars Plaintiff's fraud claim because "the legal duty underlying the fraud claim continues to be based solely on the terms of the contract," as Plaintiff's allegations "all involve Defendant KH's assertion of its legal rights" under the contract.  [Doc. 71 at 10–11].  They contend that Plaintiff's allegations show nothing more than KH enforcing its contractual rights.  [*Id.* at 11].  Mr. Hawley responds that the economic loss rule is inapplicable because his fraud claim is "based on 'an independent duty of care under tort law' which is the universal tort duty [t]o not lie to people."  [Doc. 80 at 7].

**The Fraud Claim Against Mr. Patel.**  Turning first to Plaintiff's fraud claim as asserted against Mr. Patel, it is well settled that "[t]he economic loss rule applies where the plaintiff has an enforceable contractual remedy against the person or entity sought to be charged with liability."  *Rhino Fund, LLLP v. Hutchins*, 215 P.3d 1186, 1194 (Colo. App. 2008).  It typically follows that where the defendant is not a party to a contract with

10

the plaintiff—such that the plaintiff has no contractual remedy against the defendant—the economic loss rule does not bar tort claims against that defendant.  *Id.* at 1195; *In re Bloom*, No. 22-1005, 2022 WL 2679049, at *3 (10th Cir. July 12, 2022).  However, "[w]hen the economic loss rule bars a claim against a corporate entity, it may also bar claims against that entity's officers and directors, even if the officers and directors were not parties to the contract at issue," such as when "the officers' and directors' duties, rights, obligations, or liabilities arise from the contract between the corporate entity and another." *Former TCHR, LLC v. First Hand Mgmt. LLC*, 317 P.3d 1226, 1232 (Colo. App. 2012).

The Parties agree that Mr. Patel is not a party to the real estate contract.  *See* [Doc. 68 at ¶ 2; Doc. 71 at 1 n.1]; *see also* [Doc. 43-2 at 1 (the contract stating that it is "entered into by and between KH GOVERNMENT SOLUTIONS, LLC A TEXAS LIMITED LIABILITY COMPANY, hereinafter referred to as 'SELLER', whether one or more, and Timothy Hawley, hereinafter referred to as 'PURCHASER'")].  However, Defendants do not differentiate between themselves in their argument that the economic loss rule bars Plaintiff's fraud claim.  *See* [Doc. 71 at 10–11].  Because Defendants do not articulate specific arguments with respect to Mr. Patel or explain why the economic loss rule bars a tort claim asserted against a non-party to the contract, they have not carried their burden to demonstrate that Mr. Hawley's fraud claim against Mr. Patel is subject to dismissal— particularly in light of the fact that the text messages are between Mr. Patel and Mr. Hawley.  [Doc. 43-3].  The Motion to Dismiss is thus **DENIED** to the extent it seeks to dismiss the fraud claim against Mr. Patel.

**The Fraud Claim Against KH.**  Turning to Plaintiff's fraud claim against KH, the question before the Court is whether the claim is based on the violation of a tort duty that

exists independently of the contract. *Town of Alma*, 10 P.3d at 1263. "Contract obligations arise from promises the parties have made to each other, while tort obligations generally arise from duties imposed by law to protect citizens from risk of physical harm or damage to their personal property." *BRW, Inc. v. Dufficy & Sons, Inc.*, 99 P.3d 66, 72 (Colo. 2004)). The Colorado Supreme Court has identified three factors that aid in determining whether the duty allegedly breached is independent of the contract at issue: (1) whether the relief sought in tort is the same as the contractual relief; (2) whether there is a recognized common law duty of care; and (3) whether the tort duty differs in any way from the contractual duty. *BRW, Inc.*, 99 P.3d at 74. The Court also considers "whether the plaintiff's tort claims are premised on conduct that occurred before or after the parties entered into the contract." *Dream Finders Homes LLC v. Weyerhaeuser NR Co.*, 506 P.3d 108, 118 (Colo. App. 2021). A duty of care exists separately under tort law if (1) the duty arises from a source other than the contract and (2) the duty is not also imposed by the contract. *Former TCHR*, 317 P.3d at 1231. Neither side raises arguments addressing these considerations. [Doc. 71 at 10–11; Doc. 80 at 7–8].

While Plaintiff does not identify any source for his contention that there is a "universal tort duty [t]o not lie to people," [Doc. 80 at 1], courts have recognized a "common law duty 'to abstain from fraud.'" *Owens v. Nationstar Mortg. LLC*, No. 14-cv-01434-PAB-KLM, 2015 WL 1345536, at *2 (D. Colo. Mar. 23, 2015) (quoting *Haynes Trane Serv. Agency, Inc. v. Am. Standard, Inc.*, 573 F.3d 947, 962 (10th Cir. 2009)); *see also Town of Alma*, 10 P.3d at 1263 (observing that a "common law fraud claim is based on violation of a duty independent of contract").

Other relevant factors also appear to caution against application of the economic loss rule. The relief Mr. Hawley seeks under tort law (monetary damages) is different from the relief he seeks for his contract claim (specific performance). *See* [Doc. 68 at 3, 8, 10]; *BRW, Inc.*, 99 P.3d at 74. Moreover, the conduct challenged in the fraud claim is different than the conduct alleged to have breached the contract. *Compare* [Doc. 68 at ¶¶ 12–16 (Plaintiff alleging that Defendants fraudulently misrepresented that he owed certain late charges pursuant to the contract even though he had paid the contract in full, and that Defendants misrepresented that Plaintiff owed late fees that were not contemplated in the contract)], *with* [*id.* at ¶ 10 (Plaintiff alleging that KH breached the contract because it "has failed and refused to convey Plaintiff title to the real property as agreed, . . . having instead applied his payments to illegal penalty charges")]; *compare also Najarian Holdings LLC v. Corevest Am. Fin. Lender LLC*, No. 20-cv-00799-PJH, 2020 WL 3869195, at *6 (N.D. Cal. July 9, 2020) (concluding that the economic loss rule barred the plaintiffs' fraud claim, which was based on allegations that the defendant "falsely represented that [certain] late fees were legal and authorized by the parties' contracts," because the plaintiffs' breach of contract claim similarly "allege[d] that [the] defendant charged and collected release fees that were not authorized by the [contracts]").

Furthermore, there is no indication that the common law duty to refrain from fraud is reflected in or subsumed by the contract. *See Miles v. BKP Inc.*, No. 18-cv-01212-PAB-MEH, 2022 WL 4245956, at *5 (D. Colo. Sept. 15, 2022) (collecting cases for the proposition that "where a contract subsumes an otherwise-applicable common-law duty (such as a duty to make truthful representations or a duty of reasonable care), the

13

economic loss rule bars any claims based on that duty"); *Owens*, 2015 WL 1345536, at *3 (finding that the defendant "owed independent duties to abstain from fraud and to act with reasonable care, as long as the [contract] did not explicitly subsume those duties"). Although Defendants argue that Plaintiff's fraud claim is based on "the terms of the contract itself," [Doc. 71 at 11]; *see also* [Doc. 81 at 3], Defendants direct the Court to no contractual provision that "provides the legal duty" underlying the fraud claim, *see generally* [Doc. 71; Doc. 81], and the Court could locate no contractual provision expressly subsuming the duty at issue here, *see* [Doc. 43-2]. The fact that there is no contractual provision expressly subsuming this duty weighs against finding that the economic loss rule applies. *See Haynes Trane*, 573 F.3d at 963 (applying Colorado law and concluding that the economic loss rule was inapplicable where "the tort duty alleged by [the plaintiff was] not duplicated in [its] contract with [the defendant]"); *compare BRW, Inc.*, 99 P.3d at 75 ("The contract between PSI and BRW contained the duty to carefully and non-negligently report on the Project's status. Because Dufficy alleges that PSI breached this duty, and the duty is contained in the interrelated contracts, the economic loss rule bars the negligent misrepresentation claim."). *But see Dream Finders*, 506 P.3d at 123 (finding that, to the extent there was a "duty to not make misrepresentations or engage in fraud after [the parties] entered into the contract, such duty was subsumed within the contract through the implied duty of good faith and fair dealing"). *But see id.* at 132 (Brown, J., concurring) (emphasizing that the *Dream Finders* holding was "a narrow one, driven by the specific facts of th[e] case" and cautioning that "the fact that every contract in Colorado includes the implied duty of good faith and fair dealing cannot mean that the economic loss rule bars all post-contractual fraud").

The relevant consideration here is not the underlying source of the Parties' relationship—i.e., the contract—but the source of any duty owed by Defendants to Plaintiff. *See Bartch v. Am. Fam. Mut. Ins. Co.*, No. 13-cv-01931-RBJ, 2014 WL 1924269, at *4 (D. Colo. May 13, 2014) ("As the Colorado Supreme Court made clear in *Town of Alma*, what matters for purposes of applying the economic loss rule is whether the relevant *duty* arises in the contract. That is a much narrower question than whether the *subject matter* of a dispute is covered by a contract." (emphasis in original)). On these abbreviated briefs, the Court cannot conclude that Defendants have demonstrated that Mr. Hawley's fraud claim against KH is barred by the economic loss rule. *See Owens*, 2015 WL 1345536, at *3 (declining to decide at the motion-to-dismiss stage whether the plaintiff's claims were barred by the economic loss rule because the court could not determine whether the contract subsumed the defendant's common law duties); *see also Hilb v. HSBC Bank USA, Nat'l Ass'n*, No. 14-cv-03350-CBS, 2016 WL 9738097, at *9 (D. Colo. May 26, 2016) (same). Accordingly, Defendants' Motion to Dismiss is **DENIED** with respect to Plaintiff's fraud claim against KH.

## CONCLUSION

For the reasons stated herein, it is hereby **ORDERED** that:

(1) Defendants' Second Renewed Motion to Dismiss Fraud Claim and to Dismiss Mr. Patel [Doc. 71] is **DENIED**; and

15

(2)  On or before **April 17, 2024**, Defendants shall file an answer to the Second Amended Complaint.

DATED:  April 3, 2024

BY THE COURT:

_____
Nina Y. Wang
United States District Judge